KOWALCZYK *v.* DETROIT & MACKINAC
RAILWAY COMPANY.

1. RAILROADS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE AS MATTER
OF LAW.

Motorist who was familiar with railroad crossing which was pro-
tected by a flashing signal and crossbuck and who failed to
heed air whistle and bell which were being sounded on a single-
car railroad train approaching grade crossing at 30 miles an
hour and which car was plainly to be seen *held,* guilty of
contributory negligence as a matter of law in proceeding
across tracks without ascertaining source of warning sounds
which she heard.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—NEGLIGENCE—CON-
TRIBUTORY NEGLIGENCE.

Whether or not defendant railroad company was negligent in not
causing a railway stop sign to be placed on road intersecting
State highway a short distance north of railroad crossing at
grade, in not equipping railway car with a steam whistle and
in not placing the flashing signals so as to be proper warning
to persons using both the intersecting and State highways is
not determined, where plaintiff was guilty of contributory neg-
ligence as a matter of law.

Appeal from Bay; Leibrand (Karl K.), J. Sub-
mitted October 7, 1952. (Docket Nos. 8, 9, Calendar
Nos. 45,462, 45,463.) Decided December 9, 1952.

Separate actions by Marie M. Kowalczyk and
Louis A. Kowalczyk against Detroit & Mackinac
Railway Company, a Michigan corporation, for

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur, Railroads §§ 536, 545.
[1] Failure to stop, look, and listen at railroad crossing as negli-
gence per se. 1 ALR 203; 41 ALR 405.
[2] 3 Am Jur, Appeal and Error § 823.

injuries sustained when automobile being driven by plaintiff Marie M. Kowalczyk was struck by defendant's train. Cases consolidated. Verdicts and judgments for plaintiffs. Defendant appeals. Reversed, without new trial.

*Andrews, Thoma & Wood,* for plaintiffs.

*Carl R. Henry, William F. Knapp* and *Gilbert W. Hand,* for defendant.

*Amici Curiae:*

*George H. Wyatt, William R. Althans, Forbes B. Henderson, Joseph C. Nelson,* and *James P. Triand,* for Michigan Railroad Lawyers Association.

Reid, J. These 2 cases were consolidated for purpose of trial and are consolidated on this appeal. The one case is brought by Marie M. Kowalczyk as plaintiff (hereinafter referred to as plaintiff) to recover because of her personal injuries incurred by reason of the automobile which she was driving being struck by the 1-car gas-electric powered train of defendant railway. The other case is brought by her husband because of damages occasioned because of loss to the consortium.

The accident occurred at the crossing of defendant's track north of Bay City at State Highway M-47, also known as State Park drive and also known as Henry street.

Plaintiff had traveled over M-47 from her home on Lagoon Beach drive to Bay City twice a day every day for about 2 years, while she was attending school and frequently thereafter. She had been a licensed driver ever since she moved to Lagoon Beach drive in 1940 but she had been absent from that neighborhood for about 2 years with her hus-

band while he was in the armed service. Pembroke road ends at M–47, which runs due north and south, and Pembroke road comes in from the east at a right angle. The main line of defendant's single-track railroad crossed State Park drive, also known as Henry street, from the northwest toward the southeast at about 45 degrees angle with the highway and at a point about 58 feet southerly of the center line of Pembroke road extended westerly into Henry street. The crossing was protected by flasher light signals on each side of the crossing. One railroad sign and flasher was located on the west side of M–47 at a point due west of the southerly line of Pembroke road and 12 feet westerly of the west side line of M–47. Each flasher was marked on a large striped black and white base and at the top had crossbuck warning signs. On the morning in question the bases were covered with snow.

A spur track of defendant's railway paralleling M–47 crossed Pembroke road about 50 feet east from where the pavement of M–47 intersected Pembroke. There was a regular highway stop sign on Pembroke road just east of the spur track. Pembroke road fanned out where it joined M–47 both ways, to the north and the south.

On the morning of the day in question, January 24, 1946, and preceding the accident, plaintiff had driven her car to take her father-in-law to work and had crossed the railroad highway crossing in question going toward Bay City and returned over the crossing later, returning on Lagoon Beach drive, a dirt road running east and west, 4/10 of a mile north of Pembroke road. Shortly before noon she started out again from her home on Lagoon Beach drive, drove to Lincoln road, southerly on Lincoln road to Pembroke, intending to bring her father-in-law back from his work. It had been snowing all the morning of the accident. The train was running

from Alpena to Bay City at about 30 miles per hour as it approached the crossing of M–47 going southeasterly. The car had space for the motive power and for baggage, express, mail and passengers, and the warning devices were an air horn, or whistle, blown by main reservoir pressure and a bell "that rings by air all the time."

It was testified by defendant's witnesses that the volume of noise from the air whistle was about the same as from a steam whistle. Plaintiff engineer testified that he blew the whistle at the regular crossing whistle post. He said that when he "hit the post" he started the horn and blew it "2 long then a short, and the next one I took ahold of the cord and hung on until I hit the car." He also testified the bell was ringing continuously.

Among other things, plaintiff testified as follows:

"Where Pembroke joins State Park drive pavement it fans out both ways to the north and south. As I approached State Park drive from the east I came to a single railway track similar to the railway track that crosses Lagoon Beach drive. I knew there was a railway track in that vicinity running parallel with State Park drive. When I came to that track I stopped along side of a highway stop sign. It was a yellow or orange octagonal sign with the word 'stop' on it. That sign is located just before you get to the railroad track. There is no railway crossing sign there. After I stopped I looked both ways down the track. I knew there was a track there; I didn't see it, but I knew it was there; I know it runs along there, but I don't know where it ends.

"*Q.* All right. Well, you looked down the track both ways. What else did you do?

"*A.* Well, I started my car and as I did, I heard a 'beep beep' and it was like a horn. That's what I was looking for, a motor vehicle of some kind.

"*Q.* You say it's like a horn; what kind of a horn?

"*A.* Well, it seemed like a truck.

"*Q.* You have heard those horns on trucks?

"*A.* Yes, I have.

"*Q.* And motor vehicles?

"*A.* That's right.

"*Q.* That 'beep beep' was the same sound?

"*A.* It was.

"*Q.* All right. You say this was just after you had started up from stopping at that track crossing Pembroke road?

"*A.* That's right.

"*Q.* What did you do after that?

"*A.* Well, I approached the highway and just before I got to the main highway I looked both ways down to see if there was a motor vehicle approaching. And it was all clear, so I started ahead. And as I did, I heard another 'beep beep.'

"*Q.* All right. You say as you did—where were you when you heard the other 'beep beep'?

"*A.* Turning; making the curve in the road. Turning onto the highway.

"*Q.* And was your car on the pavement or off it?

"*A.* It was on the pavement.

"*Q.* On the pavement. When you heard that second 'beep beep,' what did you do?

"*A.* I looked in my rearview mirror. I thought I had missed a motor vehicle some way—rather how it could have got up to me that fast, but I thought I had missed one, and I looked in the rearview mirror to see.

"*Q.* You say it was snowing quite heavily then?

"*A.* It was.

"*Q.* What's the next thing that you remember after looking in the rearview mirror?

"*A.* That's all.

"*Q.* What happened to you?

"*A.* I got hit.

"*Q.* By what?

"*A.* By a train.

"The train was travelling on this Detroit and Mackinac crossing there. I have been back there

since the accident and the railroad track runs at an angle across the pavement in a diagonal direction at about 45 degrees. When I heard the second 'beep beep' I was finishing my turn on the pavement and the angle of the railroad ran to my right and back of me. The pavement was covered with snow as were the rails crossing the pavement. I did not know that in swinging onto Pembroke road I was swinging near a railroad crossing State Park drive. As I was making the turn onto the pavement I was turning to my left and was going south on State Park drive.

"I had driven and ridden down State Park drive and crossed this crossing before on State Park drive. The railroad had a railroad crossing warning sign facing people approaching on State Park drive from the north. It is a post with diagonal cross boards at the top and has flasher lights.

"Q. And those things all face in what direction?

"A. South and north.    *    *    *

"Q. Did you see ahead of you at that point the standard on which the flashlight signal is?

"A. If I saw it I didn't pay any attention; I didn't know what it was.

"Q. You did testify that you knew there was a flashing light signal on the State Park road to warn people coming from the north and going south that they were going to cross a railroad track?

"A. Yes.

"Q. Now, isn't it true that the location of that signal is directly across Henry street from the center of Pembroke road? That as you rode in your car and faced the west that that standard with the flashlight signal on it was directly in front of you; isn't that true?

"A. No, it was to the side a little.

"Q. To which side a little?

"A. To the left side.    *    *    *

"Q. You stopped at the spur track and looked to the north and south, and started up, and when you were about on the spur track you heard the horn?

"*A.* Yes.

"*Q.* That's the first time?

"*A.* Yes.

"*Q.* Then you proceeded on?

"*A.* That was after I had proceeded that I had heard the horn.

"*Q.* Yes; it was during your progress.

"*A.* Yes.

"*Q.* But about the time you were on the spur track, is that right?

"*A.* Yes.   *   *   *

"*Q.*   *   *   * How far did you drive between the first stop and the second stop?

"*A.* About 40 feet.

"*Q.* And at that point when you stopped the second time you were then about 10 feet—

"*A.* (Interposing): From the highway.

"*Q.* —from the highway, and by that do you mean the edge of the concrete pavement?

"*A.* Yes.  I believe I do.

"*Q.* Henry street is a concrete pavement?

"*A.* Yes.   *   *   *

"*Q.* Well, could you see far enough down to know that there was no approaching traffic that you would collide with by proceeding on?  Was the road clear enough so you knew you could advance onto the pavement and proceed south?

"*A.* Yes.

"*Q.* And did you make the same observation to the north?

"*A.* Yes.

Plaintiff evidently knew of the existence of the main line of defendant's railway.  She does not claim that she looked up and down the railway track on which the 1-car train was approaching.  Plaintiff's knowledge of and familiarity with the railroad crossing coupled with the presence of the crossing warning device in plain view and the sound of an air whistle would impose upon plaintiff the duty in the exercise of ordinary care to heed the indica-

tions of the presence of danger and to make proper observations as the existing conditions required before proceeding onto the railroad track. Plaintiff failed to observe and take warning from that which was in plain view to be seen in front of her. On the contrary, she says she was looking at the rearview mirror for a possible approaching motor vehicle when she was struck. It is evident that if she had looked ahead instead of looking at the rearview mirror, she could have seen the approaching 1-car train. Her testimony taken in its entirety, even if believed, does not as a matter of law establish her freedom from contributory negligence.

Plaintiff claims the railway company defendant was guilty of negligence in not causing a railway stop sign to be placed on Pembroke road warning a person driving westerly on Pembroke of the spur crossing and the proximity of the main-line crossing of M-47, also in that the railway car was not equipped with a steam whistle and that the flashing signals were not so located as to be proper warning by the defendant for a person driving in the course that plaintiff drove in coming to the crossing of the road and M-47.

In view of our determination that plaintiff failed as a matter of law to establish her freedom from contributory negligence, it becomes unnecessary for us to consider or pass upon the claims of plaintiff as to defendant's negligence. The judgment for each plaintiff is reversed without new trial. Costs to defendant.

ADAMS, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE and BOYLES, JJ., concurred.